**FIN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| BLOOMAGE BIOTECHNOLOGY USA INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>*Defendants*. | **Court No**. 26-cv-03744 |

**COMPLAINT**

1. Plaintiff Bloomage Biotechnology USA Inc. ("Plaintiff" or "Bloomage") brings this action to recover import duties unlawfully imposed under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., on its imports of hyaluronic acid ("HA"), products containing HA, and other products and materials from the People's Republic of China ("China").

2. Plaintiff seeks a declaration that the Challenged Executive Orders[1] imposing these duties are void *ab initio*, a permanent injunction against further collection, reliquidation of all affected entries, and a full refund of all IEEPA duties paid, with interest.

[1] As defined in Paragraph 61 herein.

3. Plaintiff is an importer and distributor of HA in both raw form and via products containing HA.

4. Hyaluronic acid is a naturally occurring polysaccharide that is widely used in cosmetic, medical, and food products.

5. China is a major global supplier of HA and, in light of this, it is a reliable source for HA at the volume, purity specifications, and cost expected and required by customers in the cosmetic, medical, and food industries, based in the United States.

6. Beginning in February 2025 and lasting until February 2026, the President imposed a frequently modified series of tariffs on Chinese imports, by way of the IEEPA. These tariff rates were not static. Throughout the entire period that the tariffs remained in place, Plaintiff's imports of HA from China were subject to unlawful IEEPA tariffs. Plaintiff paid those duties, as was required by law, on each entry.

7. On February 20, 2026, the United States Supreme Court held unequivocally that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, No. 24-1287, 607 U.S. 229, 230, 146 S. Ct. 628, 224 L. Ed. 2d 51 (2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)). That same day, President Trump terminated the IEEPA tariff regime by executive order. Exec. Order No. 14389, 91 Fed. Reg. 9437 (Feb. 20, 2026).

8. On February 22, 2026, U.S. Customs and Border Protection (the "CBP") confirmed that IEEPA duties would no longer be collected for goods entered on or after February 24, 2026. *U.S. Customs & Border Prot.*, CSMS Message No. 67834313 (Feb. 22, 2026).[2]

9. However, product entries continue to be liquidated, even following the Supreme Court's ruling and subsequent termination of tariffs.

10. Plaintiff paid IEEPA duties on its entries of imported products, as was required by law. However, recovery of these unlawfully collected tariffs remains uncertain and Plaintiff may be required to recover relief through litigation. *See generally AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, 813 F. Supp. 3d 1298 (Ct. Int'l Trade 2025). For this reason, Plaintiff files the instant action to secure its relief.

11. Plaintiff hereby respectfully requests that the Court enter judgment in its favor on the Counts set forth herein, including reliquidation of all affected entries, a full refund of all IEEPA duties paid with applicable interest, declaratory relief, and whatever such further relief the Court believes is necessary.

## **JURISDICTION**

12. Under 28 U.S.C. § 1581(i)(1)(B), this Court has subject matter jurisdiction on account of the instant action being a civil action arising out of any law of the United States providing for tariffs, duties, fees, or other taxes on the importation of merchandise.

13. The Supreme Court, in deciding *V.O.S. Selections*, also held that challenges to IEEPA tariffs fall "within the exclusive jurisdiction of the CIT." *Learning Res.*, 607 U.S. at 240 n. 1 ("We

---

[2] https://content.govdelivery.com/accounts/USDHSCBP/bulletins/40b11c9

agree with the Federal Circuit that the *V.O.S. Selections* case falls within the exclusive jurisdiction of the CIT.").

14. Plaintiff is a "person…adversely affected or aggrieved by agency action" within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and is permitted to commence the instant action under 28 U.S.C. § 2631(i).

15. Moreover, under 28 U.S.C. § 1585, this Court possesses all the powers at law, in equity, and as conferred by statute as a United States District Court.

16. This Court has the authority to grant relief to plaintiffs in civil actions, including the ability to enter a money judgment against the United States, and issue declaratory judgments, injunctions, and orders of remand. 28 U.S.C. §§ 2643(a)(1), (c)(1).

## TIMELINESS

17. Actions brought under 28 U.S.C. § 1581(i)(1)(B) must be commenced "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

18. The Challenged Executive Orders that resulted in the collection of IEEPA duties from Plaintiff were issued and published in the Federal Register on or after February 1, 2025.

**19.** Since this action is being filed within two years of Plaintiff's claims accruing, including within two years of both (i) the issuance and publication date of the Challenged Executive Orders and (ii) Plaintiff's first payment of IEEPA duties, the instant action is timely under 28 U.S.C. § 2636(i).

## PARTIES

### A. Plaintiff

20. Bloomage Biotechnology USA Inc. is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 4 Commerce Road, Fairfield, NJ 07004.

21. Plaintiff is in the business of importing and distributing goods and materials from China to the United States, including hyaluronic acid in multiple forms, such as bulk raw material and products containing HA.

22. Plaintiff's customers include cosmetic manufacturers, personal care brands, medical device companies, and food industry purchasers throughout the United States.

23. Plaintiff is an importer of record for goods that were subject to the IEEPA tariffs imposed under the Challenged Executive Orders, and it paid those tariffs on goods it imported from China into the United States.

### B. Defendants

24. Defendant United States of America (the "United States") is the federal government of the United States. The United States is a proper defendant in the instant action under 5 U.S.C. § 702.

25. Defendant U.S. Customs and Border Protection ("CBP") is an agency of the United States Department of Homeland Security, with its headquarters in Washington, D.C.

26. The CBP is responsible for the assessment and collection of tariffs, duties, and taxes on goods imported into the United States, including the unlawful IEEPA duties collected on Plaintiff's imports.

27. Defendant Rodney S. Scott is the Commissioner of the CBP and is sued in his official capacity.

## STANDING

28. To establish Article III standing, a plaintiff must show injury in fact, causation, and redressability.

29. Each element required to establish standing is established here.

30. Plaintiff has suffered a concrete and particularized injury in fact. As the importer of record of goods from China, Plaintiff was obligated to pay IEEPA tariffs on each entry of its goods from February 2025 until such unlawful tariffs were terminated in February 2026.

31. Provided that China accounts for a significant percentage of the world's production of HA and no equivalent substitute source country exists at the volume and specification that Plaintiff's customers require, Plaintiff had no practical ability to avoid the tariffs by sourcing from a non-Chinese supplier.

32. The payment of money to the government constitutes an injury in fact. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

33. Notwithstanding any statements previously made by Defendants on the matter, it remains uncertain whether Defendants will issue refunds of the duties they unlawfully collected through IEEPA tariffs.

34. Accordingly, Plaintiff is subject to both imminent and irreparable harm since the goods for which it has paid IEEPA duties are anticipated to liquidate imminently.

35. With respect to causation, Plaintiff's injuries are the direct result of Defendants' imposition and collection of the unlawful IEEPA duties put into effect via the Challenged Executive Orders.

36. Redressability is also satisfied. A judgment from this Court ordering reliquidation of Plaintiff's entries, refund of IEEPA duties paid with interest, and declaratory and injunctive relief would fully redress Plaintiff's injuries.

## GOVERNING LAW

37. The IEEPA, 50 U.S.C. § 1702(a)(1)(B), authorizes the President to "investigate, block during the pendency of any investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in" property subject to U.S. jurisdiction in which a foreign country or national has an interest.

38. These powers "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared." 50 U.S.C. § 1701(b).

39. Notably, the IEEPA does not include the word "tariff" or any term of equivalent meaning.

40. The statutes cited within the Challenged Executive Orders also do not contain language that authorizes the President to impose tariffs.

41. It naturally follows, therefore, that no president prior to 2025 has used the IEEPA to authorize tariff imposition. *See Learning Resources*, 607 U.S. at 245. Despite this, the IEEPA has been used as a central element for the President and CBP's imposition and collection of the challenged duties at issue in the instant action.

42. The APA requires courts to "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

43. 19 U.S.C. § 1520(a)(1) authorizes refund of duties paid in excess of the amount lawfully required upon liquidation or reliquidation. CBP's regulations similarly require the refund of excessive duties and interest. 19 C.F.R. § 24.36.

## STATEMENT OF FACTS

### A. Hyaluronic Acid: Product Background and China's Supply Dominance

44. Hyaluronic acid is a naturally occurring glycosaminoglycan polysaccharide found in human and animal connective tissue known for its moisture-retentive properties.

45. While it has become widely used as a cosmetic and personal care ingredient, it is also used in medical applications and food-grade dietary supplements.

46. China is a major contributor to global HA production, with no other country likely being capable of supplying HA at a comparable commercial volume, purity, or price point.

47. In light of this, importers of HA, such as Plaintiff, are dependent on China for their supply and have no comparable alternative country to source their goods from.

48. Thus, while some commodities may be able to be sourced from countries unaffected by the tariffs, HA cannot be reliably sourced from other countries for these reasons.

49. The IEEPA tariffs imposed on Plaintiff's goods directly increased Plaintiff's cost of goods and harmed its competitiveness in the marketplace.

**B. The President Imposes and Repeatedly Modifies IEEPA Tariffs on Chinese Imports**

50. On February 1, 2025, President Trump issued Executive Order 14195, Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,121 (Feb. 7, 2025) ("China Fentanyl Tariff Order").

51. Executive Order 14195 was used to declare a national emergency on account of an alleged "sustained influx of synthetic opioids" from China. This Executive Order was not specific to imports of specific drugs, however. Rather, it imposed an additional 10% *ad valorem* tariff (adding on to existing duties) for all products being imported from China into the United States.

52. On February 5, 2025, Executive Order 14200, Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 9,277 (Feb. 11, 2025) was issued, modifying the China Fentanyl Tariff Order.

53. On March 3, 2025, Executive Order 14228, Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 11,463 (Mar. 7, 2025) was issued by the President. This Executive Order raised the "fentanyl tariff" on Chinese imports to 20% *ad valorem*, stating that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

54. On April 2, 2025, Executive Order 14257, Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order") was issued. This Executive Order declared an additional national emergency, this time based on U.S. trade deficits. It imposed a 10% baseline tariff on nearly all imports into the United States, effective April 5, 2025, and a rate of 34% that applied specifically to Chinese imports which became effective April 9, 2025.

55. On April 8, 2025, Executive Order 14259, 90 Fed. Reg. 15,509 (Apr. 14, 2025) was issued, increasing Executive Order 14257's China-specific reciprocal tariff from 34% to 84% *ad valorem*.

56. Executive Order 14266, Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment, 90 Fed. Reg. 15,625 (Apr. 15, 2025) was issued on April 9, 2025, and raised the China-specific reciprocal tariff again, this time from 84% to 125% *ad valorem*. This increase became effective on April 10, 2025.

57. On May 12, 2025, the President issued Executive Order 14298, Modifying Reciprocal Tariff Rates to Reflect Discussions with the People's Republic of China, 90 Fed. Reg. 21,831 (May 21, 2025). Executive Order 14298 suspended the 125% tariff rate, reducing the rate on goods being imported to the United States from China to 10% *ad valorem* for an initial period of 90 days, effective May 14, 2025.

58. On August 11, 2025, Executive Order 14334, Further Modifying Reciprocal Tariff Rates to Reflect Ongoing Discussions with the People's Republic of China, 90 Fed. Reg. 39305 (Aug. 14, 2025), was issued. It extended the suspension for an additional 90 days through November 10, 2025.

59. On November 4, 2025, the President issued Executive Order 14358, Modifying Reciprocal Tariff Rates Consistent with the Economic and Trade Arrangement Between the United States and the People's Republic of China, 90 Fed. Reg. 50,729 (Nov. 7, 2025). This Executive Order extended the suspension of the reciprocal rate at 10% *ad valorem* once again, this time for a full additional year until November 10, 2026.

60. Executive Order 14359 was also issued on November 4, 2025, and reduced the "fentanyl tariff" on Chinese imports from 20% to 10% *ad valorem*, effective November 10, 2025.

61. The Challenged Executive Orders identified above (in Paragraphs 53 - 60) are collectively referred to herein as the "Challenged Executive Orders."

62. The Challenged Executive Orders directed federal agencies to modify the HTSUS through new Chapter 99 provisions, which required importers to classify their entries under those provisions and pay the applicable IEEPA duties at the time of entry.

63. Each duty imposed under the IEEPA was unlawful for the same reason: the IEEPA does not authorize the President to impose tariffs.

**C. CBP's Implementation and Collection of Unlawful IEEPA Duties**

64. CBP is responsible for the assessment and collection of all import tariffs and duties. 19 U.S.C. §§ 1500, 1502, 1505.

65. Importers of record deposit estimated duties based on their customs declaration at the time of entry. 19 U.S.C. § 1505(a). The CBP then determines the final classification, valuation, and duty liability and "liquidates" the entry. 19 U.S.C. §§ 1500, 1504.

66. "Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

67. Liquidation must occur within one year of the date of entry, unless extended. 19 U.S.C. § 1504(a). The CBP is able to extend the liquidation deadline, at its discretion, for up to one year upon a showing of good cause. 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

68. An importer ordinarily has 180 days to file an administrative protest upon liquidation. 19 U.S.C. § 1514.

69. However, when the CBP acts in a purely ministerial capacity and without discretion in collecting a tariff, administrative protest is no longer available as a remedy. *See Rimco Inc. v.*

*United States*, 98 F.4th 1046, 1052-53 (Fed. Cir. 2024); *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

70. In order for a liquidation to be subject to protest under 19 U.S.C. § 1514, the CBP must have been engaged in the decision-making process in some capacity. This Court has expressly held that administrative protest would be futile to challenge IEEPA duties because CBP acted purely ministerially, without discretion, in collecting them under the Challenged Executive Orders. *AGS Co. Auto. Sols.*, 813 F. Supp. 3d at 1302-03.

71. This Court has held that it possesses "explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *AGS Co. Auto. Sols.*, 813 F. Supp. 3d at 1302. It has also held that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources decision*." *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259-RKE, 2026 WL 679285, at *1 (Ct. Int'l Trade Mar. 5, 2026).

72. This Court also possesses equitable authority to suspend liquidation pending resolution of this action. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66.

73. Thus, unless this Court rules otherwise, it is likely that these IEEPA duty payments will become final and binding upon liquidation.

74. As it would be futile for Plaintiff to file a protest, and provided that this Court has the authority to order reliquidation under 28 U.S.C. § 1581(i), Plaintiff has instead filed the instant action.

**D. The Government Is Judicially Estopped From Denying Plaintiff's Right to Refunds**

75. In seeking a stay of this Court's injunction in *V.O.S. Selections* pending appeal before the Federal Circuit, the Government represented directly and unequivocally that "[i]f tariffs imposed

on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

76. This Court in AGS further cited Defendants' representation that they "will not oppose or object to the [c]ourt's authority to order reliquidation" and that "[s]uch reliquidation would result in a refund of all duties determined to be unlawfully assessed, with interest." *AGS Co. Auto. Sols.*, 813 F. Supp. 3d at 1301. This Court held that the Government had taken the "unequivocal position" that "liquidation will not affect the availability of refunds after a final decision" in *V.O.S. Id.* at 1303.

77. The Government secured the benefit of these representations: the Federal Circuit granted a stay, allowing continued collection of unlawful IEEPA duties, including from Plaintiff, throughout the pendency of the appellate proceedings. Having induced continued collection of the unlawful tariffs through these promises, Defendants are judicially estopped from contesting this Court's authority to order full refunds now that those tariffs have been definitively held unlawful. *See Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019); *AGS Co. Auto. Sols.*, 813 F. Supp. 3d at 1301-02.

**E. The Supreme Court Holds IEEPA Does Not Authorize Tariffs**

78. This Court has already granted summary judgment in *V.O.S. Selections* in plaintiffs' favor, permanently enjoining the enforcement of the IEEPA tariffs. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).

79. The Federal Circuit then stayed the injunction, ordered expedited briefing, and affirmed that the IEEPA tariffs are unlawful. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir.

2025), cert. granted, No. 25-250 (U.S. Sept. 9, 2025). The Supreme Court granted *certiorari* and consolidated the case with *Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025). Oral argument was held on November 5, 2025.

80. On February 20, 2026, the Supreme Court held that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, 607 U.S. at 255.

81. Presented with the question whether the power to "regulate . . . importation" in IEEPA encompasses the power to impose tariffs, the Court held clearly: "It does not." *Id.* at 251. The Court observed that IEEPA "contains no reference to tariffs or duties," that Congress has elsewhere conferred tariff authority "clearly and with careful constraints," and that "no President has read IEEPA to confer such power" until the challenged actions at issue. *Id.* at 251, 255. The Challenged Executive Orders are therefore contrary to law and invalid. *See also Id.* at 255 ("[T]he terms of IEEPA do not authorize tariffs.").

### F. Plaintiff Paid IEEPA Duties on Liquidated and Unliquidated Entries

82. Throughout the period the Challenged Executive Orders were in effect, Plaintiff imported goods from China as an importer of record.

83. Plaintiff was required to, and did in fact, classify those entries under the applicable Chapter 99 of the Harmonized Tariff Schedule of the United States ("HTSUS") provisions. It also paid the corresponding IEEPA duties at the time of entry, at the rates applicable at each such time.

## CLAIM FOR RELIEF

## COUNT I

### THE CHALLENGED EXECUTIVE ORDERS ARE UNLAWFUL, FOR THE REASONS SET FORTH BY THE SUPREME COURT

84. Plaintiff realleges and incorporates by reference Paragraphs 1 through 83 of the Complaint as if fully set forth herein.

85. As detailed above, in *Learning Resources*, the Supreme Court held that the President exceeded his authority under IEEPA by imposing tariffs on imported goods.

86. The Challenged Executive Orders purport to impose duties under the IEEPA.

87. In moving to stay the CIT's judgment, the CBP also confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

88. Given that this Court is bound by the Supreme Court's decision in Learning Resources, Plaintiff respectfully requests that the Court declare the Challenged Executive Orders unlawful as applied to Plaintiff, enjoin Defendants from enforcing the Challenged Executive Orders against Plaintiff, and order the refund of all IEEPA duties paid by Plaintiff, together with any and all interest as provided by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and grant the following relief:

(a) An order directing CBP to reliquidate all of Plaintiff's liquidated entries on which IEEPA duties were assessed and paid, removing all such duties from the final computation;

(b) An order directing CBP to liquidate all of Plaintiff's unliquidated entries subject to IEEPA duties without assessment of any IEEPA duties;

(c) An order directing the United States to refund to Plaintiff all IEEPA duties collected on Plaintiff's goods, whether liquidated or unliquidated, at any rate and during any period, together with pre- and post-judgment interest as provided by law;

(d) An award of Plaintiff's reasonable costs, including attorneys' fees, incurred in bringing the instant action; and

(e) Such other and further relief as this Court deems just and proper.

Dated: August 25, 2026

Respectfully submitted,

**TARTER KRINSKY & DROGIN LLP**
*Counsel for Bloomage Biotechnology USA Inc.*

/s/ *Philip Y. Braginsky*

Philip Y. Braginsky, Esq.
1350 Broadway, 11th Floor
New York, NY 10018
Telephone: 212-216-8000
Email: pbraginsky@tarterkrinsky.com